STATE OF MAINE                          UNIFIED CRIMINAL DOCKET
KENNEBEC, SS.                           DOCKET NO. KENCD-CR-15-2430


STATE OF MAINE                    )
                                  )
                                  )
                                  )
                                  )
                                  )
VS.                               )        **ORDER ON**
                                  )     **MOTION TO SUPPRESS**
MICHAEL JOURNET                   )
                                  )
                                  )


Defendant, Michael Journet, has filed a motion to suppress evidence and statements. After the careful consideration of the testimony offered by the State's witnesses on November 29, 2016, and the thoughtful arguments advanced by Mr. Journet's attorney, the Court denies the motion.

The facts, happily, are uncomplicated. A cooperating defendant whose residence at 10 Winthrop Court, Augusta, was the subject of a search warrant, offered information to Detective Bourque regarding his heroin supplier. The cooperating defendant set up a buy with his supplier, all of which was memorialized in text communications, all of which Detective Bourque observed.

The information provided by the confidential informant, which later proved nearly metaphysical in its accuracy, prophesied as follows. On December 16, 2015, between the hours of 5:00 and 6:00 p.m., a black male would deliver 10 grams of heroin to 10 Winthrop Court. The black male would be driving a blue BMW SUV and would be coming from the Portland area, and his known practice was to transport heroin inside of his pants.

Received and Filed

FEB 1 7 2017

Augusta District Court
Kennebec Superior Court

1

Detective Bourque in fact observed a blue BMW SUV at approximately 6:40 p.m. on December 16, 2015, operated by a black male with a white female passenger on Winthrop Street, turning onto Winthrop Court. Detective Bourque initiated a traffic stop. The operator was identified as Michael Journet of Brunswick. Detective Bourque observed that Mr. Journet's pants zipper was down and his underwear was protruding outward. The female passenger, Danielle Bunikis, was hysterical and screaming. Journet and Bunikis were transported to the Kennebec County Sheriff's Office, where Bunikis pulled from her underwear a baggie of what was later tested positive for heroin. The DHHS lab measured its weight at 9.94 grams.

Journet was Mirandized and initially chose to invoke those rights. Later, Journet chose, quite voluntarily, based on the totality of the circumstances, to answer questions. Journet admitted that the heroin was his and that he had thrown it to Bunikis when they were pulled over. The Court finds that in making the confession, Journet acted of his own free will and rational intellect and in so doing, waived his Miranda rights that were administered to him.

The Court also finds and concludes that the information provided by the cooperating defendant, examined based on the totality of the circumstances, to be a reliable predicate to the stop and probable cause for arrest. Mr. Journet points out the paucity of extrinsic evidence about the cooperating defendant, which might, writ large, inform us as to his general reliability in the world. However, that is not the analytical guidepost to which the Court must adhere. Mr. Journet appears to attack the tipster's reliability on the grounds that this was the "first time in the informant's life he became a source of information for law enforcement." A tipster's anemic resume as an informant does not, standing alone, undermine the reliability of the information provided. If that were true, the obvious epistemological problems would quickly reveal themselves as wholly unhelpful and unnecessary to an overall fidelity to our Constitutional safeguards.

2

The cooperating defendant, known to Detective Bourque, worked with law enforcement in providing exceptionally accurate information regarding Mr. Journet. The fortuity that the State's witnesses could not with precision identify the year or model of the blue BMW SUV, or its license plate state or number is of no analytical moment to the Court. Detective Bourque observed the sale orchestrated through text message. The stop was made after observing a blue BMW SUV, operated by a black male, on Winthrop Court, on the date and within 40 minutes of the time indicated by the cooperating defendant. A moment after the stop, Defendant was observed with his fly down and underwear sticking through the opening in his pants where the cooperating defendant had indicated that Defendant stored heroin. Defendant's companion promptly began pulling her own hair and screaming, and later produced a bag of heroin from her underwear. After having been properly Mirandized, Defendant voluntarily confessed to the possession of heroin and how it got from his underwear to Bunikis's underwear.

Applying the totality of the factual circumstances to the well-developed body of case law regarding 4th and 5th Amendment jurisprudence[1], the motion to suppress evidence and statements is denied.

For the reasons stated herein, Defendant's motion to suppress evidence and statements is denied. The Clerk is directed to enter this Order on the unified criminal docket by reference pursuant to Maine Rule of Unified Criminal Procedure 53(a).

Date: February 9, 2017

Lance E. Walker
Justice, Superior Court

---

[1] Mr. Journet advances and conflates several principles implicated in 4th and 5th Amendment law (scope of Terry stop tantamount to arrest, warrantless "arrest and/or search", etc.). The testimonial record simply doesn't support these arguments for reasons stated herein, and others simply are inapposite altogether.

3